134 F.3d 376
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Jeryl A. CUMMINGS, Plaintiff-Appellant,
v.
David EBER, City and County of Honolulu, Defendants-Appellees.
 No. 96-16534.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 6, 1997.
Decided Jan. 23, 1998.
 
 1
 Before REINHARDT, LEAVY, and THOMAS, C.J.
 
 
 2
 MEMORANDUM*
 
 
 3
 GILLMOR, District Judge.
 
 
 4
 Jeryl A. Cummings timely appeals the district court's grant of summary judgment in favor of Detective David Eber and the City and County of Honolulu in Cummings' § 1983 action. We have jurisdiction under 28 U.S.C. § 1291, and we affirm the judgment of the district court.
 
 FACTS AND PRIOR PROCEEDINGS
 
 5
 On May 13, 1992, Hawaii Modular Space, Inc. (HMSI) reported to the Honolulu police that someone had forged and cashed six checks bearing its name as drawer and bearing the endorsements of Richard Andaya and Shane Toves. Defendant, David Eber, a Honolulu police officer, was assigned to the case. Eber arrested and interrogated Andaya and Toves, who both implicated Randall Wada as the person who gave them the checks. Wada, when interrogated by Eber, implicated Plaintiff, Cummings, a HMSI employee, as the person who gave him the checks.
 
 
 6
 According to Wada, Cummings signed the checks, Wada wrote in the amount of the check, and Andaya and Toves wrote in their names as payees. While Wada contradicted himself several times during his interrogation, he consistently stated that Cummings had given him at least some of the checks for purposes of forgery and that the checks had been cashed to either buy drugs or pay off drug debts for Cummings.
 
 
 7
 On September 21, 1992, Eber arrested Cummings and interrogated him for thirty-seven minutes. Eber repeatedly asked Cummings whether he was involved in the forgeries and told him that, if tried, the judge and jury would look less favorably on him than on Wada, Andaya, and Toves, who had admitted their participation. Cummings denied his participation in any forgery. He stated that he had signed two of the checks, but for legitimate business reasons, and that all six checks had been stolen from him, and that he had reported to HMSI his loss of the two presigned checks.
 
 
 8
 Eber submitted the forged checks to the crime lab for forensic analysis. The document examiner concluded that two of the six checks bore Cummings' genuine signature, but that the signatures on the remaining four checks had been traced.
 
 
 9
 Eber presented the HMSI forgery case to the Deputy Prosecuting Attorney on December 17, 1992, and was directed to submit the case for grand jury action. Eber prepared a closing report, which stated:
 
 
 10
 In the beginning of March 1992 Jeryl Cummings was employed as a field supervisor for Hawaii Modular Space. As part of Cummings' duties he was authorized to use manual checks for expenses drawn on a Hawaii Modular Space account at City Bank. In the beginning of March 1992 Cummings was in possession of 6 of these blank checks. Cummings (an admitted crystal meth-amphetamine user) gave these checks to a friend named Randall Wada to try and cash them to pay off a drug debt Cummings had. They agreed they would split any extra money obtained. Wada then filled in the amounts of the checks and gave 4 of the checks to a Shane Toves to cash and 2 checks to Richard Andaya. Toves and Andaya filled in their own names as payee and cashed them on various dates in March and April. These males are known to each other through their admitted drug use.
 
 
 11
 The closing report referenced the forensic analysis report of the document examiner. The closing report was not introduced into evidence before the grand jury.
 
 
 12
 In testimony before the grand jury, Eber stated that Wada had told him that all six checks were given to him by Jeryl Cummings and that Cummings had signed "most" of the checks. Eber also testified before the grand jury that Cummings had told him that the checks had been stolen from him and that Cummings had presigned only two of the checks. Eber was not asked about the forensic analysis of the checks. On November 3, 1993, the grand jury indicted Cummings on various forgery-related charges. Cummings was tried in the First Circuit Court of the State of Hawaii and was acquitted.
 
 
 13
 Cummings brought this § 1983 action on July 19, 1995, against Eber and the City and County of Honolulu asserting claims against Eber for false arrest on both September 21, 1992, and November 3, 1993, malicious prosecution, and unlawful interrogation, and claims against the City and County of Honolulu based on respondeat superior liability and liability for various city and county policies which allegedly caused the violations of his constitutional rights. On June 19, 1996, the district court granted the defendants' motion for summary judgement against all of Cummings' claims. Judgment was entered on behalf of the defendants on June 21, 1996. Cummings filed a motion for reconsideration under Fed.R.Civ.P. 59(e) and 60(b)(6) on July 1, 1996, which was denied on July 9, 1996. Cummings timely appealed on July 18, 1996.
 
 ANALYSIS
 
 14
 1. False Arrest Claims.
 
 
 15
 a. September 21, 1992 Arrest.
 
 
 16
 Probable cause for arrest exists when "the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a prudent person to believe a suspect has committed ... a crime." United States v. Hoyos, 892 F.2d 1387, 1392 (9th Cir.1989). Wada's statements concerning Cummings' participation in the forgery scheme contained some inconsistencies, but the statements were consistent in three material respects: 1) Cummings was involved in the forgery scheme; 2) Cummings had given Wada some presigned HMSI checks; and 3) some of the money obtained through the forgery was used to provide drugs for Cummings. These statements, along with the other information from HMSI, Andaya, and Toves, provided probable cause for Eber's September arrest of Cummings.
 
 
 17
 b. November 3, 1993 Grand Jury Indictment.
 
 
 18
 Police officers, unless acting as complaining witnesses, are entitled to absolute immunity for grand jury testimony. Harris v. Roderick, 126 F.3d 1189, 1199 (9th Cir.1997). We need not decide whether Eber's grand jury testimony was functionally that of a complaining witness, because any misstatements or omissions in his testimony were not likely to materially influence the grand jury's decision to indict Cummings.
 
 
 19
 The grand jury's decision to indict shields Eber from liability for his closing report unless Cummings introduced evidence that Eber knowingly submitted false information that influenced the decision or pressured the grand jury to act contrary to their independent judgment. See Smiddy v. Varney, 803 F.2d 1469, 1471 (9th Cir.1986), modified, 811 F.2d 504 (9th Cir.1987). There was no evidence that Eber's closing report came before the grand jury. Moreover, the report did not misrepresent or omit facts that were likely to influence the decision to indict Cummings. Therefore, the district court properly granted summary judgment against this false arrest claim.
 
 
 20
 2. Claim for False and Coercive Interrogation.
 
 
 21
 The Fifth Amendment right against self-incrimination and the Fourteenth Amendment substantive due process right are violated when police use coercion "in pursuit of a statement from a person suspected of a crime." Cooper v. Dupnik, 963 F.2d 1220, 1244 (9th Cir.1992). Eber's interrogation, while vigorous and persistent, was not coercive and did not violate the Fifth and Fourteenth Amendments.
 
 
 22
 3. Malicious Prosecution.
 
 
 23
 Cummings concedes that his claim for malicious prosecution based on violations of his substantive due process rights is barred by the Supreme Court's decision in Albriqht v. Oliver, 510 U.S. 266, 271 n. 4 (1984).
 
 
 24
 4. Claims Against the City and County of Honolulu.
 
 
 25
 Cummings concedes that his claims against the city and county based on respondeat superior liability are barred by Monell v. Department of Sociali Serv., 436 U.S. 658, 664 n. 7 (1978). In addition, Cummings has not established the existence of the municipal policies alleged in his complaint.
 
 
 26
 5. Motion for Reconsideration.
 
 
 27
 Cummings' motion for reconsideration contained legal arguments that had been previously heard and rejected by the district court and sought to introduce new evidence without a showing why this evidence could not have been submitted before the court granted summary judgment for the defendants. The district court did not err when it denied Cummings' motion.
 
 CONCLUSION
 
 28
 After de novo review, we affirm the judgment of the district court.
 
 
 29
 REINHARDT, concurring and dissenting: U,8. COURT OF APPEALS
 
 
 30
 I concur in the majority's analysis in all respects except its conclusion that the misstatements and omissions in Eber's grand jury testimony "were not likely to materially influence the grand jury's decision to indict Cummings." (majority at 5). Because I conclude that Eber's misstatements and omissions were material, I do not agree that he is entitled to summary judgment on the § 1983 claims that are properly based on the giving of that testimony.
 
 
 31
 First, while the majority does not decide whether Eber's grand jury testimony was functionally that of a complaining witness, there is at least a genuine issue of material fact with regard to that question. Eber was the single officer assigned to the case. He conducted the investigation and interrogated Mr. Wada, the only individual who implicated Cummings in the forgery scheme. With Wada's statement, he proceeded to arrest Cummings and presented testimony to the grand jury which resulted in Cummings's indictment and second arrest. These facts certainly raise a genuine issue of material fact as to whether Eber actively instigated the prosecution of the plaintiff and acted as a complaining witness. See Malley v. Briggs, 475 U.S. 335 (1986) (finding that officer acted as a complaining witness because he instigated the prosecution by conducting the investigation and by filing the initial complaint).
 
 
 32
 Second, Eber's misrepresentations of critical facts in his grand jury testimony were likely material to its decision to indict Cummings--and certainly raised a genuine issue of material fact as to this issue. Whether an omission is material depends on whether the decisionmaking body would consider it important in reaching its decision. See Hervey v. Estes, 65 F.3d 784, 788 (9th Cir.1995) (holding that materiality of misrepresentions in an affidavit for probable cause depends on whether the information would likely influence the decision to issue the warrant); see also TSC Industries, Inc. v. Northway, 426 U.S. 438 (1976) (announcing the standard for materiality in the context of shareholder actions); Golino v. City of New Haven, 950 F.2d 864, 871 (2nd Cir.1991) (holding that factual determination of the materiality of an omission in an affidavit depends on whether the information would likely be given weight by the person considering the issue).
 
 
 33
 In his grand jury testimony, Eber failed to mention that the crime lab reports confirmed that Cummings signed only two of the checks and that someone else had traced signatures on the remaining four. This was a material omission because the forensic report corroborated Cummings's statement to Eber that he presigned two of the six checks before they were stolen and that he did so for legitimate reasons. Furthermore, the report cast doubt upon Wada's story that Cummings had signed "most" of the checks. Eber, by failing to mention the forensic report, omitted important information that would have enabled the grand jury to determine which story--Cummings's or Wada's--was more credible. Because Wada supplied all of the information that formed the basis for Eber's testimony against Cummings, it was critical that Eber fairly and accurately represent to the grand jury facts that might have demonstrated that Wada's story was not credible.
 
 
 34
 In his grand jury testimony, Eber also omitted the fact that "Wada contradicted himself several times during his interrogation." (majority at 2). Again, as with Eber's omission of the forensic reports, his failure to mention that Wada's story was internally inconsistent deprived the grand jury of important information tending to demonstrate that Wada's story was not truthful. Indeed, Eber's testimony misrepresented the statements that Wada had made, viewed in their entirety. These misrepresentations and omissions were substantial enough, in my view, to raise a genuine issue of material fact as to whether the grand jury was materially influenced by Eber's misrepresentations. Therefore, the district court's grant of summary judgment was not proper and Cummings was entitled to a trial with regard to the relevant claims.
 
 
 35
 Accordingly, I concur in part and dissent in part.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3